May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of Petitioner Elvis Paduraro Rusu. The threshold question in this case concerns the scope of the Court's jurisdiction. In Ramadan v. Gonzalez, which was re-argued just yesterday, the Court suggested that the new INA Section 242a-2d extends the Court's jurisdiction only to constitutional claims and pure questions of statutory construction. In arriving at that conclusion, the Court relied upon a Conference Committee report, which in my view says two things that are inherently inconsistent. On the one hand, the Conference Committee report does suggest that a question of law is a question regarding the construction of a statute. On the other hand, the Conference Committee report says explicitly that the purpose of 242a-2d is to permit judicial review over those issues that were historically reviewable on habeas. I regard these two things as inconsistent because as the Supreme Court recognized in St. Cyr, habeas jurisdiction has long extended beyond pure questions of law. It extends unquestionably to the application of law to undisputed facts. So what are we supposed to do with these two inconsistent statements that are found in the Conference Committee report? Well, counsel, in the specifics of this case, your quarrel is whether it was wrong to conclude that there were no exceptional circumstances here. And at one level, there's a question of law, but primarily what you're saying is we know what exceptional circumstances are. That's a legal standard. That's really not in question here. It's just saying my facts are good enough. I actually think there are two errors that the Board made in this case that are reviewable. The first is a pure question of law, and that is under the statute and the governing regulations, the critical question, the critical inquiry in determining whether an asylum application can be filed beyond the one year is whether there are, quote, extraordinary circumstances. And those are defined in the regulations. The Board, in its decision, strangely never even invoked the extraordinary circumstances language. It applied an exceptional circumstances test. Not once, but four separate times, it characterized the test as not one involving extraordinary circumstances, but rather one involving exceptional circumstances. And from my perspective, that's an important thing because exceptional circumstances is a term that we in immigration law deal with on a regular basis. In fact, it's defined in the Immigration and Nationality Act, Section 240E1. It's defined as generally circumstances that are beyond the control of an alien. Now, that is a much more strict standard than the extraordinary circumstances test. To demonstrate extraordinary circumstances, an alien doesn't have to demonstrate that the circumstances are beyond his or her control. He only has to demonstrate that he didn't intentionally create the circumstances by his own actions or inadvertence. So, in our view, the Board applied an incorrect legal test here. I mean, it's strange. It's downright bizarre. But the Board didn't once, not once, invoke the extraordinary circumstances language. Four separate times, it talked about the determination being one involving exceptional circumstances. Now, we know that these can't mean the same thing because we have in the Act, Congress used the term extraordinary circumstances in Section 208. They used the term exceptional circumstances in 240. I mean, obviously, under Cardozo-Fonseca, when Congress uses disparate language in one section of the Act and refuses to use that language in another, we have to presume that it's acting intentionally. We have to presume that these two terms have somewhat different meanings. They're similar, but they can't be identical. And so, in our view, the Board erred by applying the wrong test. The second thing that the Board did here that I think is an error of law, and this is where I think it depends on the scope of the Court's review, and that is whether the Court's review is limited to purely legal questions or the application of law to undisputed facts. Because the Board accepts, it recognizes that it would be what it called an exceptional circumstance, but in reality, the issue is whether it's an extraordinary circumstance. But it's an extraordinary circumstance where... Do you think extraordinary circumstances is a more favorable test for you than exceptional circumstances? Under the INA and as it's defined in the regulations, I do, Your Honor. Yes. It's not readily apparent from the plain language of the opinion. Yes, that's for sure. But the term exceptional circumstances is defined in the Act as something that's beyond the control of the alien. And by regulation, extraordinary circumstances, as I said, it does not have to be beyond the control of the alien. All that the alien has to demonstrate is that he did not intentionally create those circumstances. That's a much lesser burden. But anyway, so the Board... Well, they have to have a certain quality to them, too, even if, you know, the alien didn't create the circumstance. Of course. It still has to rise to a certain level of seriousness. And I think that's one of the key points for the BIA in this case. Well, if it's the wrong test, we would have to remand. Precisely. We can't do anything. Under Thomas Ventura, the Board's playing the wrong role. I know Ventura very well. And, you know, we certainly wouldn't want to intrude on the Board's function by making a decision if they had not applied the right test. And that would be our view. If the Board applied an incorrect test, the Court has to remand. But there's a second issue here that I think is reviewable. And that is it relates to this issue about whether Mr. Pateraro demonstrated extraordinary circumstances by having been in lawful nonimmigrant status during part of his first year in the United States. And the Board recognized that it can be an extraordinary circumstance if the alien had maintained a lawful nonimmigrant status during some portion of his first year here in the United States. And it quotes the regulation. The regulation says it's an extraordinary circumstance if the alien maintained a lawful nonimmigrant status as long as he files his application within a reasonable period of time. And so the issue before the Board, because it's undisputed that Mr. Pateraro maintained a lawful nonimmigrant status for the first six months of his stay here, the issue before the Board was just really, was the period of time that he took to file thereafter reasonable? But the Board really didn't conduct any analysis on that question at all. It simply said one year on lawful status is unreasonable. But you can't conclude, you can't even assess whether Mr. Pateraro's actions were reasonable unless you consider all the circumstances surrounding those actions. And the Board didn't consider any of those in assessing whether his actions were reasonable. It didn't consider the spina bifida of his daughter in this context. It didn't consider the fact that he had received erroneous advice from members of his church and friends. Well, it did consider them, but you're saying it didn't consider them. It didn't consider them in the context of determining whether or not the delay in filing was reasonable. It considered them only in the context of determining whether or not those actions would constitute an exceptional under the act of extraordinary circumstance. It never considered whether or not those actions might render the delay in filing reasonable. Now, that's not a pure question of statutory construction. It's more a question of applying the law to the facts of this case. But it seems to me that in failing to consider all the circumstances underlying his actions, the Board committed an error of law that's reviewable. Were all of these circumstances before the Board? Yes, Your Honor, they were, most definitely. How old was the child when the case came before the Board? Before the Board? I think the child was approximately nine years old at the time of the hearing before the immigration judge. Yes, Your Honor. The child is still alive, living here in Portland. Is the condition still an extraordinary circumstance? No. At this point, I think the child is in relatively good health. The point that I want to emphasize here, the impact of an incorrect decision on the one-year rule, is that Mr. Pateraro and his daughter will be permanently separated from Mr. Pateraro's wife and the mother of his child. The penalty, incredible as it may seem, for filing an application late is that he cannot sponsor his wife. The Board recognized that he can't return to Romania. He faces a clear probability of persecution upon return. They granted him withholding of removal, so he can't go back. But the penalty, the penalty for filing late is that he can never be reunited with his wife and the mother of his child. I assume his wife is still abroad. Yes, Your Honor. She's still abroad. They've been separated now for the past six years. If this case goes on and we remand, that's just going to extend the time of the report. Well, they can't remove him at this point, Your Honor. He's been ordered removed, but there's no country that will accept him. And he's got withholding of removal to Romania, so he's here. His wife is in Romania. What my hope is is that if we remand this case, that we can convince the Board at that point to accept some additional evidence and some additional argument so that we can eventually cure this situation. Thank you. Thank you. Good morning, Your Honors. Good morning, Ken. I'm Ken Baumann. I'm an assistant United States attorney for the District of Oregon. I agree with my colleague about the extraordinary circumstances argument, but I would like to go back and review the history of this case briefly because I would submit there's also a jurisdictional question. All right. Let's leave the jurisdictional question aside for the moment. Certainly. And assume we're on the merits. When you say you agree with your colleague, does that mean if we reach the merits that they did apply the wrong standard? Do I believe they applied the wrong standard? No, I do not believe the BIA applied the wrong standard. Then what do you agree with him about? I agree that there is a question of the extraordinary circumstances, what they are in this case, and whether or not you have the ability to review the BIA or the immigration judge's decision with regard to the fact that it's clear one year passed. So now you fall into was there extraordinary circumstances to excuse the failure to file an application for asylum within the one-year limitation? And that's clearly a discretionary call by the immigration authorities, the immigration judge and the BIA. Well, what do you say about the argument that they did not apply extraordinary circumstances, they applied exceptional circumstances, and those terms are defined differently in the regulations? I agree in their opinion they used those terms. I'm not sure that by reading that opinion, and that may be something you have to determine whether or not the BIA used the wrong standard. I see. Counsel, I do have a question about your jurisdictional argument, and I don't know if you have in front of you 8 U.S. Code Section 1252, excuse me, I'm sorry, 8 U.S. Code Section 1101A-47A, which I'll read to you. Because it defines an order of deportation as the order of, and I'm going to leave out some words, as an administrative officer to whom the attorney general has delegated the responsibility of determining whether an alien is deportable, concluding that the alien is deportable, or ordering deportation, and I'll end the quote there. And what seems significant to me about that is that an order which simply concludes that the alien is deportable is considered an order of deportation just the same as one that orders deportation, just by the words of it. And I wonder why that doesn't answer your argument just on the face of the statute and give jurisdiction so long as the order concludes that the person would be deportable, even if it doesn't order them deported now, which is this person's situation. That may well be, Your Honor, but that was not actually a jurisdictional argument I was going to raise. The jurisdictional argument I was going to raise has to do with the fact that this was filed and came on appeal as a petition for writ of habeas corpus under 28 United States Code Section 2241. The court has yet to decide whether they're going to treat this as a petition review or not. The opposing counsel jumped to that conclusion without this court making a decision, although seven days ago I got a request to forward to the court a copy of the certified record from my indications that it may want to treat it as a petition for review. The statute under the Real ID Act did not address cases that were on appeal as a petition for review, as a petition for writ of habeas corpus. It only addressed cases that were in the district court as a petition for a writ of habeas corpus. So the court, in some of its cases, has decided that we will treat cases that were on appeal as petitions for review, because that's what Congress would have attended. What those cases don't address is, if we treat it as a petition for review, are we going to excuse procedural default? Mr. Rusu went from the immigration judge to the BIA. The next step is that the BIA decision was on November 18, 2003. The time for him filing a petition for review or notice thereof was December 18, 2003. He did not do so. But at that time, habeas corpus was the appropriate remedy, wasn't it? I'm not sure that habeas corpus was the appropriate remedy, because, as Judge Aiken found, she denied the petition, said, no, this is not something that's reversible. She denied that on jurisdictional grounds. So you're talking about a failure to exhaust, basically. Yes. So she's supposed to go from the immigration judge to the BIA, to this court. To that court. Lickety split. Okay. And procedural default is a subcategory of failure to exhaust. And when Mr. Rusu decided on April 7, 2004, to file a petition for rid of habeas corpus, in his jurisdictional statement, which was in my brief, he basically admits that, I don't think I can file a petition for review because I'm not going to prevail, so I'm going to find a habeas corpus petition. I think the quote is, although 28 United States Code Section 158, small a for n's 3, provides that, open quotes, no court shall have jurisdiction to review any determination of the attorney general, end of quote, relating to one-year time limitation of filing the application for asylum, that provision does not eliminate this court's habeas corpus jurisdiction because it does not explicitly mention habeas corpus. So if, in your initial stages, you have to make a determination whether you're going to review this as an appeal from habeas corpus, which is how Mr. Rusu originally decided he was going to proceed, or a petition for review. Well, let me ask you this. Suppose at the time this happened, instead of being in the court of appeals, the petition had still been in the district court, where Congress said that all pending petitions in the district court would be transferred to the court of appeals and treated as petitions for review. Would he not have been all right then? He would have. Okay. Now, don't we have a case since then that says we treat matters pending in the court of appeals the same way, that it was just a statutory gap? Yes. My brief says that. There are numerous cases. In fact, I just got an opinion a week or so ago that said he just did exactly that. But those are court interpretations of the statute. And so the statute says, and treated as timely file. Since they're court interpretations, that statute does not apply. And what I'm saying is the next step is you have to determine whether or not you're going to excuse the procedural default. Let me see if I can unravel what you're saying in a slightly different way, because I'm having trouble following it. It may just be me. If I understand your position correctly, it is that when this BIA decision was made in November of 2003, the petitioner had an opportunity within 30 days to file a petition for review with this court and failed to do that. Precisely. So, presumably, even if the habeas, and then he files a habeas petition, the right answer for the habeas petition is it loses as a matter of law because it's the wrong way to have gone about it and it's too late. And, therefore, even if we take it as timely file here, that can't cure the original defect of his failing to file the petition when he had the opportunity. Is that really your argument? Precisely. Okay. He's used a habeas corpus. How do you still, when it says, you said had it been still pending in the district court at the time of the passage of the Real ID Act, then it would have been transferred to the Court of Appeals. And then, under the Act, it would have been treated as timely. Yes. Because the statute specifically addressed that case. It did not specifically address cases that were on appeal. That's been a court decision. Okay. It's a court decision. But under the court decision, we treat cases that are pending in the Court of Appeals the same way as we treat cases that were pending in the district court. But in those cases, there hadn't been a procedural default during the regular immigration process. And I'm saying you have to first address that issue. Are we going to excuse the procedural default? The procedural default is not filing with us. It's not an administrative default. Correct. It's not timely filing a petition. It's not timely filed in the court. Correct. Right. Okay. And isn't that what the statute says? You treat it as timely filed in the court? No, because the statute only applies to things pending in district court. Right.  So if this had been in the district court, you agree that he would have had no problem. It would have been transferred and treated as timely filed. And the question is whether we treat petitions filed in the Court of Appeals identically to those filed in the district court. That's the jurisdictional question that needs to be resolved that these other cases haven't resolved before. And I'm over my time. You even get to this extraordinary circumstance. Right. No, no. We understand that it's – Yeah. Okay. Thank you very much. And I'm sorry I got a field on that, but I thought that was an issue that needed to be addressed. Yes, it does. Thank you. We have four seconds left on this procedural default issue. I hope you will talk longer than the four seconds with the permission of our presiding judge because I don't understand the statute to have been intended to revive an already too late opportunity to have petitioned for review directly to this court, which wasn't done. Yeah. See, you have to go back in time. This is a pre-Real ID Act situation. And at the time, the law was under 208A3 of the Act that says no court shall have jurisdiction to review any determination by the attorney general relating to the one-year rule. That was the law in effect, pre-Real ID. And this court had interpreted that provision in Hakeem before we filed our habeas to preclude circuit court review. So the idea that we should have filed a petition for review only to have it dismissed pursuant to Hakeem in order to prevent any future argument against jurisdictional, you know, procedural default is kind of, in my view, it's a frivolous argument. Anything we would have filed at that point would have been dismissed pursuant to Hakeem. And the proper remedy at that point was a habeas. Precisely. And that's what we did. And there was no timeliness problem with respect to a habeas petition. Precisely. Exactly. And under the Real ID Act, obviously, timeliness is lack of timeliness, lack of filing the petition in that normal 30-day period that you would have to file a petition for review. That's forgiven expressly by the statute. All right. Did you have anything else you wanted to say? No, Your Honor. Thank you, counsel. Case just arguably submitted. The Court will take a brief recess. Thank you, Judge. Thank you, Your Honor.
judges: Goodwin, Reinhardt, Graber